MATTER OF YATCH CARIBBEAN STAR

In FINE Proceedings

MIA-10/61.235

*Decided by Board May 12, 1961*

Fine—Payoff and/or discharge of alien crewman without permission—Tempo-
rary departure from United States without termination of services and with
intention of returning to vessel.

Liability to fine for paying off and/or discharging an alien crewman is not
incurred where the crewman who has been paid earned wages plus a $50
advance temporarily leaves the United States for Nassau to obtain papers
necessary for his promotion to master of the vessel; his delay in rejoining
the vessel has resulted from circumstances beyond the control of any of the
parties concerned; and it is still intended that he will rejoin the vessel,
when repairs are completed, as its master.

BASIS FOR FINE: Act of 1952—Section 256 (8 U.S.C. 1286).

**BEFORE THE BOARD**

**DISCUSSION:** This appeal is directed to an administrative pen-
alty of $500 ($1,000 mitigated to the extent of $500), which the
District Director at Miami has ordered imposed on Edwin P. LeMay
and Associates as owners and/or agents of the above-named vessel
which arrived at the port of Miami, Florida, from foreign on Sep-
tember 1, 1960. The specific violation charged is the paying off
and/or discharging of the alien crewman, G—W—A—, without prior
permission from the Attorney General or his duly designated repre-
sentatives. The appeal will be sustained.

The vessel involved is a charter boat of British registry which,
at the time of its last arrival (*supra*), was returning a charter party
to the United States. This crewman, who was then its mate, was
granted a D-1 conditional landing permit. Under the terms thereof,
he was required to depart from the United States on the vessel's
next foreign sailing; in no event was he to remain in this country
in excess of 29 days; and he could not be paid off or discharged with-
out prior permission from immigration officers, acting for the Attor-
ney General.

It had apparently been decided, prior to the vessel's arrival, to
promote this crewman to the position of master of the vessel. This

272

necessitated his return to Nassau to obtain "papers" covering the latter rating. And, since the vessel was in need of minor repairs, it was agreed by the owners that the crewman should combine his business trip to Nassau with a vacation. It was the understanding of all parties concerned, however, that the crewman would return to the United States and assume command of the vessel as soon as it could be repaired. Accordingly, he was paid the wages he had earned to date, plus a $50 advance against future earnings.

On September 3, 1960, the crewman left the United States for Nassau aboard an aircraft operated by Pan American World Airways. He then surrendered his D-1 conditional landing permit (*supra*) to that carrier, and the latter endorsed it to show his departure and forwarded it to the Service. According to the record, this was the procedure the crewman was told to follow by the immigration officer who admitted him. Apparently he had advised said officer of his intended brief trip to Nassau at the time of his admission.

Now, however, it develops that the crewman is still in Nassau and has accepted part-time employment there. The reason given is that hurricane Donna wrecked the vessel, and that its owners have not as yet been able to raise the funds necessary to render it seaworthy again. Thus, the date of the crewman's resumption of his duties aboard the vessel is uncertain. But the record definitely demonstrates that he intends to rejoin it eventually, and that its owners still consider him its master.

Under this section of the law, the element essential to establish a violation is the termination of the crewman's employment by an affirmative act of the parties responsible for the vessel or of the crewman himself (*United States* v. *Seaboard Surety Company*, 239 F.2d 667). But there is no evidence of any character here to show the existence of that crucial factor. Therefore, we hold that liability to fine for paying off and/or discharging the crewman has not been incurred.

The payment of wages in full to the crewman did not, in and of itself, constitute a breach of the statute (*United States* v. *Seaboard Surety Company*, *supra*). The granting of a leave of absence (vacation) to him did not, as we have consistently held, constitute a termination of the crewman's services aboard the vessel on which he arrived in the United States, being merely a temporary interruption thereof. His temporary departure from the United States did not sever his connection with the vessel and was obviously made with Service approval and in compliance with the conditions of his admission, at least from the time limitation standpoint. His delay in rejoining the vessel has resulted from circumstances beyond the control of any of the parties concerned, and certainly not from the

273

affirmative act or desires of any of them. Finally, no claim has been advanced or showing made that the crewman has been signed off the vessel's articles or given a discharge slip.

**ORDER:** It is ordered that the appeal be sustained and that the fine be not imposed.