MATTER OF M/S VALIANT TRADER

In Fine Proceedings

SFR 10/28.212

*Decided by Board May 7, 1974*

Where an alien crewman was injured on board ship after it left San Francisco (en route to Yokohama); he was removed by launch and admitted to the U.S. Public Health Service Hospital; the carrier advised the Service that the crewman would be continued on the vessel's payroll following injury and would rejoin his ship at Yokohama; and the day of his release from the hospital, the crewman flew to Japan to rejoin his vessel, fine under section 256 of the Immigration and Nationality Act was improperly imposed since there was no evidence whatsoever that there was a payoff and discharge of the alien.

BASIS FOR FINE: Act of 1952—Section 256 [8 U.S.C. 1286]

IN RE: M/S "*VALIANT TRADER*," which arrived at the port of Honolulu, Hawaii, from foreign on June 26, 1972. Alien crewman involved: JONG BACK AN

ON BEHALF OF CARRIER: A.R. Blackburn
Lilly Shipping Agencies
One California Street
San Francisco, Calif. 94111

This case presents an appeal from a decision of the District Director at San Francisco, California, wherein a fine in the amount of $1,000, mitigated to the minimum sum of $500, was imposed upon Lilly Shipping Agencies, for violation of section 256 of the Immigration and Nationality Act, as amended. The appeal will be sustained and the order imposing a fine will be withdrawn.

The specific violation complained of was failure of the M/S "*Valiant Trader*" to obtain consent of the Attorney General before paying off and discharging an alien crewman, Jong Back An. The vessel had arrived first at Honolulu for Nagoya, Japan on June 26, 1972, at which time the alien had been granted a conditional permit to land temporarily. He was injured after the vessel left San Francisco on the evening of July 13, 1972. The alien suffered a fractured skull and was bleeding profusely from one ear, nose and

mouth. He was removed from the vessel by launch and admitted to the United States Public Health Service Hospital. The M/S *"Valiant Trader"* continued on its trip to Yokohama, Japan as scheduled, without the alien. Two weeks later, on July 27, 1972, the alien was deemed fit for duty and released from the hospital. He flew to Tokyo the same day to rejoin his vessel, at no expense to the United States Government. The foregoing facts are not in dispute.

The carrier was notified by the District Director of his intention to impose a fine under section 256 of the Act for unlawfully paying off and discharging the alien crewman without first having obtained the consent of the Attorney General. In reply to the charges by the District Director, it was alleged in behalf of the carrier that since the alien had been removed from the vessel "during non-office hours, it hardly seemed sensible to contact your office before entering him into the hospital." It was further alleged that in a telephone conversation the following morning with a person speaking for the Service, the carrier was assured that it would be sufficient if the alien was noted on the crew change report filed by its customs broker. The instruction was followed and it was the carrier's position that the intent of the law to prevent alien seamen from remaining in this country was not violated. In any event, the carrier advised the Service that the alien crewman would be continued on the vessel's payroll following his injury and would rejoin his ship at Yokohama, Japan.

The District Director, noting that an unintentional violation of the statute is not a basis for exception, concluded that liability to fine definitely had been established. He found, however, that discretionary mitigation of the statutory fine of $1,000 was merited in this instance, to the extent permitted under section 256 of the Act, namely, the absolute minimum of $500. On appeal, it is contended by the carrier that the Service contributed to the violation and that ". . . a $500.00 fine is completely out of line."

We have carefully reviwed this matter and conclude that the fine was improperly imposed. Under section 256 of the statute, the carrier has an absolute duty not to pay off or discharge any alien crewman employed on board a vessel or aircraft arriving in the United States, without first having obtained the consent of the Attorney General. The only exception to this rule is an alien lawfully admitted for permanent residence. There is no indication whatsoever that there was a payoff and discharge of the alien in this instance. Since the statute we administer is penal in nature, strict proof of a violation is required. The Service has failed to meet its burden. As we stated in *Matter of Yacht Caribbean Star*, 9 I. & N. Dec. 272 (BIA 1961), under section 256 of the Act, "the

element essential to establish a violation is the termination of the crewman's employment by an affirmative act of the parties responsible for the vessel or of the crewman himself." On the record before us, we are persuaded that there was no such affirmative act. Rather, it appears that the alien was not paid off; that he was kept on the crew list; and rejoined his vessel in Japan.

Although this case involves a rather unusual set of circumstances, we cannot agree with the District Director's conclusion that liability to the fine of $1,000, mitigated to the sum of $500, has been incurred. There has been substantial compliance with the law and we are satisfied that the penalty was improperly ordered imposed on the carrier. Cf. *Matter of SS. "Loch Avon,"* 7 I. & N. Dec. 215 (BIA 1956). Accordingly, the appeal will be sustained.

ORDER: The appeal is sustained; the order of the District Director on October 5, 1972 is reversed; and the fine is remitted.